Good morning, everyone. Welcome. Our first case this morning is Paramount Media Group v. Village of Bellwood. Mr. Nischel? I please support, counsel. My name is Joe Nickley, and I represent Paramount Media Group in this appeal. What your honors have before you today is the review of an ordinance passed by Bellwood, which gives Bellwood essentially a monopoly over the billboard business in the Village of Limits. This ordinance should be strucken down for several reasons. First and foremost, because it violates the First Amendment to the United States Constitution, and second, because it runs afoul of the monopoly and antitrust provisions of the Sherman Act. In regard to the First Amendment, this case should be decided under the principles articulated in Central Hudson. Speech is not misleading, so there's no issue in the first prog. The Village has proffered the reason for the current enactment of the ordinance as necessary for the- Before you get into the merits, perhaps you'd like to address the standing issue. Much of this case was resolved on standing grounds in the district court. I will, your honor. In regard to standing, the district court and Bellwood and Image Media relied principally on the case of HAARP, and that's HAARP v. the Chicago Ridge, I believe. Maybe before you start with case law, you'd like to articulate what your injury is and what remedies are available since your client no longer has a leasehold in the property that you want a court order permitting you to build a billboard on or permitting your client to build a billboard on, and the state has pulled the permit. That's true, but it's our position that we still do have a lease on the property. The district court did not comment on, and defendants, or the appellees in this case- As the case comes to us, you do not have a lease. You're litigating the revocation of it in state court, as I understand the record. But as the case comes to us, you don't have a legal interest in this property that you want to erect a billboard on. Or you have a state permit. I'm sorry, your honor. The SOTYs, who are the lessors of the property, have taken the position that they have terminated the lease. It is Paramount's position, and this is what's being asserted in the DuPage County action, is that they do not have the ability to terminate the lease, and they have not done so. Now, they have taken the position, your honor is correct, that that's what they have done. But the termination of that lease is the result of the tortious interference in the lease by Image Media. And after this case was filed in the district court, Michael Scheid, the president of Image Media, approached the SOTYs, knowing full well that there was a lease, and with the inducement of $30,000, had them sign a lease with Image Media, and then after the fact, that's when the SOTYs then attempted to terminate the lease. So there is a DuPage County action based on those actions to declare that the lease has not been terminated. And IDOT has also been brought into that case, because based on the willful and wrongful actions of Image Media, the SOTYs then approached IDOT and said that the lease has been terminated, and then IDOT took the position, without knowing the whole story about this lawsuit and what was going on, and took the position that there was no leasehold interest and no permit. Isn't Judge Sykes' question, though, getting to assume Paramount just doesn't prevail in DuPage County? Contrary to its wishes, I know. Wouldn't your position be asking us to resolve a First Amendment question that we absolutely would not have to resolve if that leasehold interest is not in place? In other words, it seems to me you're asking us to prematurely decide the question. Well, Your Honor is correct that in the DuPage County action, if Paramount is unsuccessful, then there is no leasehold interest. Okay, and let's assume hypothetically, because I know it hasn't happened. Assume that Paramount is not successful in DuPage County, and we had not yet issued an opinion here. Would we have subject matter jurisdiction to do that? Well, at that point, then, Paramount would not have a leasehold interest, and they would not have a permit. And what would that do to this court's jurisdiction, if anything, in your view? Well, in that case, then, Your Honor is correct, that they would probably not be standing in this case. But it is our position, obviously, that we are likely to succeed in that DuPage County action. And the DuPage County court has taken the position that that case is, while pending and active, is essentially on hold pending this court's, or excuse me, pending the district court, and what happens on this appeal. So in that case, there has been a motion for summary judgment filed by the Sodies, which was ultimately denied by the circuit court of DuPage County. And based on that, it is Paramount's position that we will likely be successful in that case because of the unique fact pattern here, where there is no provision in the lease agreement that allows the Sodies to terminate, and based on the tortious interference by image media. Well, right, we can't decide a First Amendment claim, and whether you're entitled to injunctive relief based on something that might or might not happen in the state court action. But there's a unique circumstance here, Your Honor, where if there is a standing issue, it was created specifically by image media for the purpose of creating a standing issue here. Michael Scheid, the president, approached the Sodies specifically with the intent to try to create this standing issue. It came to them, knowing that there was a lease, and with the inducement of $30,000, induced them to attempt to breach the lease. Well, that's the theory of your tortious interference case in the state court, I understand. But as I said earlier, we have to take the case as it comes to us now, and as it comes to us, you don't have a leasehold, you don't have a permit. So there's no basis for the courts to authorize or to issue an injunction permitting you to build on this property or to erect a billboard on this property. Now that's separate, your damages claim is separate, so perhaps you'd like to turn to that. Yes, Your Honor, and briefly, I guess I would just reiterate the characterization that there is no leasehold. I mean, they're taking that position, but we believe there is still a lease here. And so there's a controversy regarding that, I guess is the best way to describe it. That's being litigated in state court. Yes, Your Honor, yes. So, I mean, in regard to damages, what essentially has happened here, as a result of the conduct of Image Media and Bellwood, and as a result of the ordinance, Paramount does not even have the ability to build its sign. And I would characterize, and this goes back a little bit to the prior argument, that part of the conspiracy here was to ensure that the lease was breached or attempted to terminate. Okay, maybe you could put this argument in the context of the law of standing. If you don't have standing, if your client does not have standing for an injunctive remedy here, because you're no longer the leaseholder, at least as the facts stand right now, and you don't have a permit, does that affect your client's standing to bring a damages action? I don't believe so, Your Honor. And the reason is because, without beating a dead horse, Your Honor, going back to what I said before, I believe... Let's talk law, okay? Not your factual claim that you still are the leaseholder. Right. And because of the conduct here and the overall conspiracy to ensure that Image Media and Bellwood maintained this position, they took actions to ensure that Paramount... Use the law of standing. What is your injury? Is it traceable to these defendants? Is it redressable by a damages remedy from this court? Yes, it is, Your Honor. In regard to the damages and standing, Paramount had a leasehold interest. They had an IDOT permit, and it has been denied the opportunity to build its billboard. Okay, and why isn't the damages claim untimely? You had this leasehold interest back in, what, 2006? 2006, correct, Your Honor. 2006. The sign-ban ordinance was adopted by Bellwood in 2009. Yes, Your Honor. And you didn't sue until 2013. So you're challenging, on a number of constitutional theories, the sign-ban, the 2009 sign-ban. That claim accrued when the sign-ban was adopted in 2009, and there's a two-year statute of limitations. So why isn't your claim time-barred? All of your constitutional claims, all the 1983 theories that you're pursuing here. Well, for a few reasons, Your Honor. First and foremost, we're dealing with the current ordinance scheme that was enacted in 2012. And Bellwood has a provision. No, you're challenging the sign-ban. That's what's preventing you from building here. Yes, Your Honor. You're bootstrapping a challenge to the 2012 amendment, which permits signs on village-owned property, but that's just an argument about the ordinance being under-inclusive. So that's a legal theory. Your challenge is to the ban, which is what's preventing you from building your sign. Correct, Your Honor. Right. So that claim accrued in 2009 when the municipality adopted the ban on new billboard signs. So why isn't all your constitutional claims, First Amendment, due process, equal protection, why aren't those time-barred? Well, just for the reason I said before, Your Honor, I believe it's a different ordinance because the reasons are different from the ordinance that was passed in 2012. And that's what called into constitutionality of the ordinance in question  You're not challenging the rationale for the statute, though. You're challenging its effect. And its effect was the effect that's of interest to your client, at least as I understand your claim, stems entirely from the original ordinance in 2009. Any effect from allowing billboards to be put on village-owned property, that's not your focus. Your focus is that you want to, at least I understand your claim, your client wants to put a billboard on the 1133 property. Correct. Is that right? Yes, Your Honor. Okay. Well, the ban that precludes you from doing so originated in 2009. Right? It didn't come into existence with the amendment. Right. So I think that's what Judge Seitz is, if that's the issue, weren't you under an obligation within two years of the enactment of the ordinance to bring the 1983 First Amendment claim? But with the passage of the current ordinance with the exception in place, that brought into focus the reasoning for the passage of the ordinance. And what I mean by that is if it was a total ban, then under the case law by the Supreme Court, there's probably a better chance of that surviving constitutional scrutiny. When we talk about claim accrual, we don't talk about when your theory becomes better. Your legal theory under the First Amendment maybe got a little better in 2012, but the claim accrued in 2009. Correct, Your Honor. Correct. Also for First Amendment challenges, numerous circuits of the appellate court have found it doubtful that a First Amendment challenge can ever be barred by the statute of limitations. And so that would be another reason why the statute of limitations does not apply to this case, is because we have a First Amendment challenge, a facial First Amendment challenge to the ordinance, and there's been numerous courts, as we cite through the brief, including two circuits that have found that that is not, it's doubtful that a facial challenge on First Amendment grounds could ever be challenged. And so under that reasoning, it's also not barred by the statute of limitations, and that also does not preclude the claims for antitrust liability under the Sherman Act. Did the town's municipal ordinance that was in effect on the day you filed your lawsuit in May of 13, were you required to have a permit under the ordinance as it existed at that time? Yes, it would have had, in order to build the billboard, permission would have been sought by the village. Did you ever seek one? The permit was not sought because there was two meetings with village officials earlier in the year between Peter Cholos and Dave Cross, president of Paramount Media, and then also a subsequent meeting with Mr. Cholos and Mr. Costato, and it was made abundantly clear and perfectly clear that they would not allow, the village would not allow, a billboard to be constructed on their 1133 property. When were these meetings? These were made, I believe, in early of 2012, around that time. Okay, well what about 2006, when your client acquired this leasehold interest and could build a billboard? No permission was sought at that time, Your Honor. So three years went by before the 2009 sign ban was enacted and your client did nothing to seek a permit from the village or try to otherwise make use of its leasehold interest. It sought a permit from IDOP but did not seek permission from the village. And that's not untypical in this industry. These pieces of property, particularly around I-290 and the Chicagoland highways, are very valuable pieces of property for billboard companies, and it's not untypical for billboard operators to lease these properties, get their foothold in, and then take whatever action is necessary. Sometimes it necessitates, for political purposes, it necessitates other village officials coming in, things like that, before it can actually be constructed. So that's not untypical in this industry for it to occur, that there's actually a lease held and that it takes some time then after that to build the billboard or to actually construct the billboard. And so what we have in this instance is not only the fact that the ordinance combined in the case here, but then also the fact that Mr. Kwas met with village officials on two separate occasions. They told him in no uncertain terms that they would not grant a permit or consider a permit, and so any further, I guess, seeking of a permit at that time would have been a futile exercise, and that's what differentiates this instance, this case, from the Unity Ventures case that was cited by the district court and defendants and employees in their brief. In that case, the mayor said they wouldn't grant a permit to connect to a sewer at that time, and they emphasized at that time, and they also took the position they never said definitively that they would never do it. In this case, that's completely the opposite. Here, Mr. Kwas was told in no uncertain terms that a permit would not be granted and indeed would be a futile exercise. But as a legal matter, your client certainly had a right under local law to seek a permit from the village between 2006 and 2009 before the sign ban was adopted. But for the delay, your client might have it signed. He had it right. Other considerations come into play, obviously business considerations, things like that, but that is true, Your Honor. So there may be a series of layered causation issues here, but those are merits questions, not standing questions. True. Right now your main impediments are standing on any claim for injunctive relief or declaratory judgment and the time bar on a damages claim, at least as to your 1983 causes of action. Correct. And in regard to the time bar, again we would reiterate that it's our argument and our position, obviously, that the facial challenge to the First Amendment grounds to the ordinance is not time barred based on the current state of the law, and also there's other claims for antitrust claims, and also Paramount seeking declaratory relief and injunction, and there's been some suggestion by district court that that's not subject to statute limitations as well. I'm not following that. There was a suggestion in the case, I think it was Lavely, it's a district court position, and they made a statement that because of the declaratory... Perhaps just cite some appellate court case law from this court if you have it. There's none, Your Honor, and that's why I said it was a suggestion from district court. But there certainly has been circuit court cases that have held that it's doubtful that in these circumstances that a First Amendment challenge can be made as a result to an ordinance based on a First Amendment challenge. In regard to the standing issue, again, in a circumstance like this, the defendants are the ones, in regard to the lease issue at least, are the ones who created the issue here. And so these are tactics that were used to try to be successful in this litigation, and these tactics should not be allowed. The image media specifically sought out the lease to hold interest here with the sole purpose of interfering with the lease in order to affect standing. And there can be no question about that, and that was made part of this lawsuit. It was alleged as Count 7 of the amended complaint after it was discovered what had happened, and it was dismissed as a result of the district court striking the federal court claims. That's absolutely a reason here as to why standing has been affected. And so at this time, I believe I'm into my rebuttal time. And unless there's any further questions, Your Honor. No, you can reserve. Thank you. Mr. Morris. Thank you. Good morning. May it please the court. My name is Hal Morris. I represent Image Media Advertising Incorporated with my colleague, Mr. Anderson, who represents the village of Bellewood. We were the appellees this morning. This is a case which I think the court has now  The issue is that the case does not have standing, and the court has not decided the case does not have redressability, and the facts of the case, whether you look at the injunctive counts or the damage counts, all arise out of the fact that there could not be a sign built here because there was never a permit asked. The actual chronology in this case is one of those matters where it's important to look at. As the court has already recognized, the leasehold for this property started for Paramount in 2005 or 2006. The ordinance that is really being challenged is not until 2009. During that entire period, there is never a request for, much less the granting of a local permit. There is an IDOT permit, however, that is granted during that intervening period. What's important, I think, to realize is whether or not the village had a meeting, whether at that meeting village officials said you're not going to get a permit, is of no moment. Why is it of no moment? The village officials do not, by themselves, control the process. That's the corporate authorities. An easy analogy is for me or another lawyer to call up the court's clerk and say, do you think I can do this? They say, I don't think so. That is not a ruling of the court. It is not a ruling of the village. They never availed themselves at any time, even through today, to ever seek a local permit. So what is this case when we look at it really at its base level? It's a case of speculation. It's a case of what-ifs. They're asking this court to decide issues that are not right yet, and that may never be right because there is no standing. They're saying, if we prevail in the DuPage County action in state court, and if we are determined to have a contractual right, and if that contractual right allows us to build a billboard, we can move one step further. Set aside their damages claim for a moment. When they filed their lawsuit on May 30th of 13, am I correct? They did have a lease in place. The lease, in other words, had not been canceled by the 1133 property owners, the Sode family, and they had an IDOT permit as of May 30th, 2013. The IDOT on that extension, I think, that was given? The IDOT extension was. The Sode's canceled the lease in October of 2013. Right. So on May 30th of 13, the lease was still in place. It had not yet been canceled. That's correct. Okay. And the billboard ban, of course, was still in effect. That's correct. Okay. Why don't those facts alone combine to lead to standing on the day the lawsuit was filed, and why isn't the argument more that the matter became moot? The village ordinance that is at issue here, 156.207, in Section A specifically says, all operators or owners of an off-site advertising sign must apply for and obtain an off-site advertising sign permit. They never did that with the village. So even if they had two legs of the three-legged stool, they didn't have the third leg and it can't stand. So there was never standing even then. I think the court is correct if we assume, which I don't believe we can, that maybe they could have gotten those other permits and maybe they could have gotten it. It then did become moot. And that's why there's nothing to redress here in this case. As I said, this is really a case of a lot of what is and what could have or what might have been. During the argument we just heard, counsel specifically said, I believe we're likely to succeed in the DuPage County action. That's not the test of standing. That's speculation. Speculation does not give us, under Article III, standing for a case. Moreover, in this case, there is the bar of the statute of limitations. The court asked, has the Seventh Circuit looked at the statute of limitations on these matters? And the answer is yes. And I'm going to mispronounce it. I apologize. A Shaffa case in 1998, the court found, as was noted, that there is a two-year statute of limitations. So we ask ourselves, why are we here then with a case filed in 2013 looking at a sign ban in 2009? We should not be because it's barred. When you look at the contractual right, the case as it exists at the time of summary judgment and certainly the case as it exists at the time of the appeal before this court in the argument, there is no contractual right to build. There's an argument that a party is making saying, I think I should have one, but this court should not and does not decide, certainly a constitutional issue based on him. In addition, what we're really looking at is a period of time. From as the court noted in 2005 or 2006 with the lease, no action was taken to put that last or that third leg of the stool on the local permit. So there was nothing that was there. IDOT subsequently revoked its permit. So now we have really now another leg of the stool off, and right now we're sitting on the floor. There's no contract for a leasehold. There's no IDOT permit to allow it under state law, and there's no local permit, which has not even been asked for. The district court also went further and said, but let's assume all that away, and they said based upon the plans you provided to us, you can't build this anyways, the court decided, because it would impinge upon the structures. Once again, we have to look at what if. They say, well, what if we worked with the village of Bellwood? We could work it out. That isn't what was before the court or this court. So once again, we're missing the predicate to standing and the predicate to redressability, so that even if this court would enter or consider entering an injunction, it couldn't be redressable because there cannot be any type of sign put up there. What this court would need to do to satisfy the plaintiff's request would have to find, number one, that they applied for something and they're going to get it. Number two, that they're going to apply to IDOT and get a permit from IDOT. Number three, that as cited, the statute, or I'm sorry, the ordinance is unconstitutional. And then number four, they could actually, in fact, build what they're asking this court to say we can build. And I would submit to the court that they can't. So there is no redressable injury that can occur here. On the construction point, help me out on this aspect of it. There's an aspect of the record, isn't there, that Judge Cole had said, look, you're bound by the plan that you have submitted, and that plan, I think is the point you're making, is that plan is not compliant. And therefore, you can't get around your argument, as it continues, would be I guess you can't get around HAARP by saying, well, we have a lot more flexibility than the folks in HAARP did, and we'll submit a compliant plan if we prevail here. Because by saying we have a lot more flexibility admits, either implicitly or explicitly, admits that our plan doesn't work. We have to rely somewhere on flexibility and decision-making at the village level. And once again, that is something that the court would need to speculate on. But the discovery ruling precluded them from submitting a revised or an altered proposal, right? It did. So based upon the record before this court and that discovery ruling, what is there could not be built, which the district court concluded. So as a result of that, that's a physical impossibility which suggests that this court, any order it entered, really would not be effectively redress any injury because you couldn't build it anyways. The 1983 action itself really falls, which is the other portion we talked about, on several grounds as relates to image media. The first is, as we've already discussed, the statute of limitations. Secondly, image media, as we know, is not part of the Bellwood government. It is not a state actor. The record in this case makes clear from the principle of Paramount that he has no information, and there is no information on the record, that image media was involved at all in the drafting or the enactment of these statutes, or these ordinances. And that's a logical and a very common-sense result. Because why? Image media does not sit on the board of Bellwood, obviously. Rather, what we hear, once again, is speculation which really goes to standing. Well, I really believe that they had a hand in all this. But there's no facts that are in the record, and the district court recognized the lack of facts by finding that there could be no Section 1983, i.e. constitutional claim against image media specifically. The claims are based on the sign ordinance. Those claims on the sign ordinance is an ordinance that we know is not passed and cannot be passed by an independent commercial organization. It's passed by government entities. The government entity here is Bellwood. Putting aside that Mr. Anderson will talk about that the Bellwood ordinance is appropriate, certainly any issue with the Bellwood ordinance is not an issue with image media. There's discussion of conspiracy under the Sherman Act. The Sherman Act, as we know, is really, for this purposes, a monopoly or antitrust act. It once again goes back to the sign ordinance. What was that sign ordinance in 2009 or even in 2012? It's simply not something, again, that image media had anything to do with. There is nothing in the record, there are no facts, there is, of course, speculation on the part of Paramount that image media must have had its hands in this somehow. But even in 2009, there's no suggestion that image media is even involved in any property at this point. So even the conspiracy aspects that they ask for are inappropriately against image media. Lastly, the pendant or the supplemental claims under state law, which the court, in its discretion, chose not to exercise jurisdiction over, those are state law claims. That was fully within the discretion of the district judge once the district court judge disposed of all the federal claims giving federal subject matter jurisdiction of the court to say, I'm not going to consider them. What Paramount suggests is that they should proceed by themselves. And I would submit to the court that in the discretion of the district court, District Judge Alonzo was correct and certainly did not abuse his discretion by saying that it should not proceed here. What we have simply put, as I would submit to the court, is that there is no claim that is either withstanding or that is redressable by any action that this court could take. I believe that this court should affirm what the district court did because it acted appropriately and recognized it as such. It was proper to decline jurisdiction. It was proper to find that there was not standing. It was proper to find that there was no redressability. Where I started is where I end. This is a case where Paramount asked the court and really asked the district court to speculate. What if I prevail here? What if this would have happened but didn't happen? What if I apply for a permanent? I get it. All those what-ifs do not give us constitutional standing under Article III. And as a consequence, we would urge the court to affirm the district court's ruling because there really is nothing else before this court. Unless there's any other questions, Mr. Anderson is going to address the constitutional issues as it relates to the Village of Bellwood. Thank you. Counsel, please record. Good morning. My name is Corey Anderson. I represent, as counsel has indicated, the Village of Bellwood in this matter. Assuming the standing argument is not resolved in favor of the appellees, we get to the First Amendment issue that's been articulated by the appellants in this case. What's your position on Judge Scudder's question about whether this is more appropriately considered a mootness problem rather than a standing problem? Is mootness as far as failing to apply for the permit? Mootness in that the plaintiff, Paramount, no longer has a leasehold interest, nor a state permit. Yes, I think there are multiple layers to that issue. The failure to apply for the Bellwood permit, also the fact that they do not have that leasehold interest any longer with the SOTYs. The SOTYs canceled that lease. The failure to obtain yet another IDOT permit, which has expired. There are multiple layers to that question, which we feel like they do not satisfy. But assuming, again, if the court does reach the conclusion that they do, we believe that the ordinance, the Bellwood ordinance banning off-site advertising does pass the First Amendment challenge. As counsel began to articulate, there is the four-part central Hudson test, which articulates four parts of the First Amendment issue, the first of which is not challenged, the second of which is the restriction on commercial speech is valid if it seeks to implement a substantial governmental interest. I don't think there can be any challenge to that prong of the central Hudson test. As the ordinance in question obviously states, the purpose of the ordinance is to promote aesthetics of the village, safety as far as traffic controls, and those factors have been sustained by the United States Supreme Court in the Metro Media case as valid support for a complete ban on off-site advertising, which is the case in this matter with the 2009 Bellwood ordinance. What was the catalyst for the 2009 signed ban? Does the record tell us? I don't know if the catalyst for the ban in 2009 is fully articulated in the record, but the 2009 ordinance itself states the basis for the ban, which is the reasons that I've already articulated, which is the public health, safety, welfare of the citizens of the village of Bellwood, along with the aesthetics that apply, which have, like I said, been articulated in the Metro Media opinion. Right, but there's usually something going on on the ground that impels local governments to take action on local problems. Your Honor, I don't know if there's anything in the record, frankly, that indicates a specific catalyst for that 2009... That wasn't developed in discovery? I don't believe so, other than the fact that that was the track the village wanted to take, which was to preserve the aesthetics of the village and not have, along the 290 corridor, billboards proliferating along the I-290 corridor. At the end of the day, it's a bit of a mixed objective, right, after the amendment in 12, because they, in other words, let's not litter the landscape with billboards. They created an exception to that by allowing, at their discretion, a billboard on village-owned property, right? That's correct. Does the existence of that discretion in any way change the constitutional analysis that you were articulating a minute ago? I don't believe so. I think the standard still applies under Central Hudson, which is does the village have a substantial interest in regulating speech and also using village property for the purposes of generating revenue, which is the basis for the 2012 amendment to that ordinance. They are, as I think Your Honor has already articulated, almost the same, with the exception of that change, which is all off-site advertising isn't allowed with the exception of property owned by the village of Bellwood. And the purpose for that was to make sure that the village could generate revenue. It was in dire financial condition at the time, and that's why that change to that ordinance was made. Which, again, we would submit is compliant with the standards set forth by the Supreme Court in Central Hudson. Well, the argument would be that the exception undermines the outright ban and the justifications for the outright ban because it suggests that the village wasn't really concerned about aesthetics much at all because it's willing to allow new signs on its own property for revenue generation purposes. So that's the argument anyway. I understand the argument, but the problem with that argument, Your Honor, is that if all off-site advertising is allowed, the volume of advertising and billboards in Bellwood would exponentially increase beyond the volume that would appear if it were just village-owned property. And I think it achieves both goals, and it also is compliant with the standards set forth by the Supreme Court in that aesthetics of the village is a sustainable interest for the village. Also, on the other hand, generate revenue for its residents. The record shows that the village accepted the bid ultimately or the proposal of Image Media because they thought the financial terms and conditions of it were more attractive, correct? Yes. Is there any evidence in the record that suggests that the decision to accept the proposal from Image Media was based in any way upon the content of what they proposed, putting on a billboard that they may construct? No. There's nothing in the record that would suggest that it's a content-based decision. It's a financial decision. As Your Honor pointed out, the offer made by Paramount, and by the way, Paramount was the first entity through the table when it comes to that proposal at 1156. Their offer was $1.1 million, thereabouts, over 40 years, and Image Media's offer was $800,000 originally in a lump sum. And the village simply found that to be a better alternative as far as the financial concern is made. What's the length of the I-290 corridor that sits within Bellwood's jurisdiction? I'm not sure, to be honest. I don't know the mileage or the distance. So we don't know what part of that is village-owned adjacent abutting property and what part is privately held? I could not give you a specific distance. Apologize. I'm not sure of that number. I don't want to make a representation. So the exception that was promulgated in 2012 for village-owned property, there was no discussion of revenue stream, how much property there would be to develop in this way with new billboards that would create a revenue stream for the village? That's usually what would go on with a governmental decision like this. And there may have been, Your Honor. I don't know if there was a specific analysis done that would articulate this is the amount of revenue we may achieve by way of each and every parcel of village-owned property in that corridor. I'm not aware of that. But I do know that there is obviously an easy way for the village to generate revenue which is to lease that space without opening up every other private location for additional billboards or advertising. Who's responsible at the village level for issuing permits for our billboards? Well, there is an individual named John Galvin I'm not asking for him personally. What's the governmental structure? To whom is the permit application submitted? Who rules on it? Is there an appeal? Who is the ultimate decider? My understanding is that there is a zoning board that deals with the application process and then the village trustees would determine along with the mayor whether or not a permit is approved for the purposes of erecting a billboard on village-owned property. So it starts at the zoning board? I believe so, yes. John Galvin is the individual I mentioned. He's a part of that. He's the initial intake person at the village who receives the applications and the permitting process. But it's ultimately the village board's decision? Yes, and that's articulated in the ordinance as well. The village trustees have the ability to determine whether or not that proposal is accepted. For the elements of Central Hudson, there's been no real presentation of evidence from Paramount that would indicate that the ordinance in question ever has deviated from that standard. And again, the Supreme Court and Metro Media found that a complete ban on off-site advertising is appropriate. It does comply with the First Amendment regulation on commercial speech. So again, other than Metro Media, there's also the Metro Lights Matter that we cited to in the Ninth Circuit, along with others, including Interstate Outdoor in the Third Circuit, which upheld that standard. The next issue that was raised by Council today was the antitrust matter, which Council also spoke to at Council for Image. We've and the district court agreed that the village bill would have immunity under Parker v. Brown, which is a United States Supreme Court case in 1943. And essentially what Parker said was that the Sherman Act was not intended to apply to restraints imposed as an act of government. So municipalities fall outside the Sherman Act to de-allege any competitive measures were authorized by state law and also within the traditional areas of local government activity. And as the district court, Judge Alonzo, has already decided that has in fact been the case here with regard to the ordinance in question. So there can be no Sherman Act liability and stemming from that, there can be no conspiracy to violate the Sherman Act if Bellwood as a village is immune from liability. I'm over time. Apologies. Thank you. Thank you. I think I mispronounced it. It's Nickley? Okay. Thank you. To address the question about whether this is a mootness issue or a standing issue, Your Honor is absolutely correct. At the time that the lawsuit was filed, there was a lease and there was an IDOT permit and those were lost because of the actions of Image Media. And so for it to be a mootness issue, the case is still pending in DuPage County and so it's not completely foreclosed at this point. I guess judging from Your Honor's comments, at this point Paramount is in a catch-22 because the circuit court in DuPage County has taken the position that this is Judge Wheaton, that that case can't be decided until this case is decided. And now it seems that Your Honor is suggesting that this case can't be decided until that case is decided. So it sounds like there's a little bit of a limbo here. But I would submit that, as I said before, that Paramount does have standing because there is an attempt to breach the lease here or break the lease. They cannot do so. Turning to some of the comments regarding the constitutionality of the ordinance, the United States Supreme Court in the city of Cincinnati versus Discovery Channel emphasized the need and the requirement that there be a reasonable fit between an ordinance and its alleged goals. Here the exception undermines any alleged goals of the ordinance. And as Your Honor has touched upon, besides some boilerplate language about the aesthetics and the safety of the village, there's really no other evidence in the record as to support the fact that the goals of the ordinance were to support the aesthetics and safety of the village. And what we have here now is an ordinance that Bellwood has, in their wisdom, decided to waive any interest they have in safety and aesthetics when they stand to gain, or when it stands to gain financially. And this case is a perfect example of how the ordinance undermines its purported goals and the absurdity of that position because the Bellwood property that Image Media is building their sign and the property that Paramount wishes to build a sign are right across the street from each other. So we're talking about banning the same type of signs in very close proximity to each other. So how is a sign on Bellwood property any more aesthetically pleasing or safe than the sign on the Paramount property? And it's not an all or nothing proposition. It doesn't have to be a total ban or the current ban or allowing every billboard to go on in Bellwood. There's other ways... When you're bringing a facial challenge, it kind of is. And the argument that you just made a moment ago about the signs being across the street from each other or the proposed signs, etc., that sounds more like an as-applied challenge. You're not attacking the statute or, excuse me, the ordinance facially. I think it emphasizes how the ordinance undermines itself and allowing the exception for billboards only on Bellwood property. And my point to before was sort of the fourth prong of the central Hudson analysis where it doesn't have to be the least restrictive, but it can go no farther than necessary to achieve its goal. And in this instance, they could have limited the number of billboards, they could have setbacks, they could have regulations, they can have size limitations to protect the safety and aesthetics, and they haven't done that. And so, in distinguishing this case from the Harp case, in that case, this court repeatedly asked the appellant's attorney, Harp's attorney, whether it would be willing to build a smaller sign if allowed to. And Harp, in that case, declined to make that representation. And so, the basis of that opinion was the fact that they didn't want to build a smaller sign. And here, in this case, as we've stated extensively through litigation, Paramount's main goal is to build its sign. And it will do whatever it has to do to build its sign. I'm about five seconds away from my time if there's any further questions, Your Honor. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.